UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-21071-ALTMAN

CHARLES HADDAD,

     *Plaintiff*,

v.

CARNIVAL CORPORATION,

     *Defendant.*

_____/

## ORDER

A cruise-ship passenger, our Plaintiff, walked out into a storm just before lunchtime. Rain covered the ship's outdoor decks, and waves jostled its passengers—but our Plaintiff, despite recognizing the slippery conditions, proceeded anyway. Unsurprisingly, he fell on the wet floor and injured himself. He's now sued the cruise line for negligence. After some litigation, the cruise line moved for summary judgment. Because the floor's slippery and dangerous condition should have been open and obvious to any reasonable observer, we **GRANT in part** and **DENY in part** the cruise-line's motion.

### THE FACTS

Our Plaintiff, Charles Haddad, "was a passenger onboard the Carnival *Venezia*." Joint Statement of Material Facts ("Joint Facts") [ECF No. 62] ¶ 1. Haddad was travelling with his family, including his father. *See* Haddad Dep. [ECF No. 48-2] at 8:15 (attesting that he was on the "cruise with both of [his] parents and [ ] three siblings"). "At some point in the morning" of March 23, 2024, "Carnival made a weather announcement to passengers," including to our Plaintiff. *Id.* ¶ 4. The announcement warned passengers that "there was going to be light drizzle and some choppy waves." Haddad Dep. at 90:15–17. And that's exactly what happened. It "rain[ed] throughout the day," Joint

Facts ¶ 6, and the ship was "rocking" from the wave swells, Haddad Dep. at 114:22. Given the weather conditions, the Plaintiff "was having a hard time keeping [his] balance." *Id.* at 115:1–2. Walking around the ship that morning, he and his father were "bumping into each other," "swaying, losing balance," and "rocking around trying" not to fall, *id.* at 115:5–7, because the rocking made "it more difficult to walk straight," *id.* at 116:9. Haddad's father joked that he "felt[ ] like a salad" because "he was getting tossed around." *Id.* at 92:3–4, 7.

"Around lunchtime," *id.* at 146:25, Haddad and his father decided "get something to eat," *id.* at 145:12. They landed on the "La Strada Grill," which had an "outdoor area" on Deck 5. Joint Facts ¶ 2. Haddad and his father approached a "revolving door," *id.* at 93:21, and saw that "it was dark outside" and "that there were people eating" at the La Strada Grill, *id.* at 93:24–25. Haddad knew "it had already been raining," which he took as "an indicator" that the deck would be wet. *Id.* at 99:1–2. The deck also had "liquid across it," "looked saturated" and "darker," and "didn't have the matte shiny finish that it would have if it was dry." *Id.* at 99:5–6. As Haddad approached the revolving door to walk out to the outdoor deck, the deck "look[ed] visibly wet[.]" *Id.* at 95:22. Haddad "consider[ed] the deck to be a slipping area because of the wetness[.]" *Id.* at 148:20–22.

Still, Haddad and his father "continue[d] out," despite "know[ing] that the floor [was] wet," because they were "hungry and [ ] wanted to see if [they] could make it to grab a plate" of food. *Id.* at 104:13–19. Haddad was wearing "flip-flops" that he had only worn "on this trip." *Id.* at 111:16, 18. Once Haddad stepped outside, he "tr[ied] to be careful walking because [he] knew that the floor was wet[.]" *Id.* at 100:12–13. Ultimately, after taking several steps onto the deck, Haddad "saw enough to understand that it was an unsafe environment," *id.* at 151:24–25, so Haddad and his father "decided that it wasn't worth it" and "turned around to go back inside," *id.* at 99:25–100:3.

That's when things took a turn. Haddad "planted [his] left foot to turn around and then rotated [his] left foot." *Id.* at 101: 5–6. But the ship "hit a wave swell," and Haddad "fell and [ ] slipped back[.]"

2

*Id.* at 106:23–24. He "grabbed on to a pillar" and "tried to use it to pull [himself] up"—without success. *Id.* at 107:1–2. The *Venezia* "hit another wave swell," and the Plaintiff "twisted" his "left ankle" "behind him" and fell. *Id.* at 107:2–3, 18–19. There were approximately "15 to 20 people" on the deck when Haddad fell. *Id.* at 105:15–16. Still, he "did not see anybody [else] fall" on his way to La Strada Grill and only "saw some people stumble[.]" *Id.* at 146:22–23.

On March 7, 2025, Haddad sued Carnival, asserting three causes of action. *See* Complaint [ECF No. 1]. Count I (Negligent Maintenance) alleges that Carnival "[n]egligently maintain[ed] the deck flooring by causing or allowing the deck flooring to become saturated with both rain and sea water" and "fail[ed] to have adequate risk management procedures in place[.]" *Id.* ¶ 26. Count II (Negligent Failure to Warn) claims that Carnival "fail[ed] to warn the Plaintiff of the unreasonably dangerous weather conditions of the subject area[.]" *Id.* ¶ 41. Count III (Vicarious Liability) maintains that Carnival "crewmembers . . . knew or should have known, in the exercise of reasonable care, of the implications that the severe weather conditions would have had on the vessel and failed to properly announce the severity of the storm to the fare paying passenger." *Id.* ¶ 50. On April 18, 2025, the Defendant filed its Answer and Affirmative Defenses [ECF No. 16].

On February 5, 2026, after the close of discovery, Carnival submitted its Motion for Summary Judgment (the "MSJ") [ECF No. 49], which is now fully briefed and ripe for adjudication, *see* Plaintiff's Response to MSJ (the "Response") [ECF No. 60]; Defendant's Reply in Support of MSJ (the "Reply") [ECF No. 63]; *see also* Joint Facts; Defendant's Statement of Facts ("Def. Facts") [ECF No. 48]; Plaintiff's Statement of Facts ("Pl. Facts") [ECF No. 61]. This Order follows.

## THE LAW

"Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters." *Guevara v. NCL (Bah.) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019). "Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules,

3

modifications of those rules, and newly created rules." *Misener Marine Const., Inc. v. Norfolk Dredging Co.*, 594 F.3d 832, 838 (11th Cir. 2010) (cleaned up) (quoting *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864–65 (1986)). A cruise line "is not liable to passengers as an insurer," but is instead liable to passengers "only for its negligence." *Keefe v. Bah. Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) (cleaned up). "The elements of a maritime negligence claim, in turn, are well-established, and stem from general principles of tort law." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). A cruise passenger must show that "(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm." *Guevara*, 920 F.3d at 720 (cleaned up) (quoting *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012)).

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis added). Facts are "material" if they "might affect the outcome of the suit under the governing law." *Id.* at 248. And an issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ibid.* "All reasonable inferences must be drawn in favor of the nonmoving party, but a mere scintilla of evidence will not suffice to overcome a motion for summary judgment." *Ismael v. Roundtree*, 161 F.4th 752, 758–59 (11th Cir. 2025) (cleaned up); *see also Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990) ("When a motion for summary judgment has been made properly, the nonmoving party may not rely solely on the pleadings, but by affidavits, depositions, answers to interrogatories, and admissions must show that there are specific facts demonstrating that there is a genuine issue for trial.").

4

"In sum, if there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial." *Brown v. Learjet, Inc.*, 2025 WL 3724471, at *6 (S.D. Fla. Dec. 24, 2025) (Altman, J.) (quotations omitted) (quoting *Amaya v. Vilsack*, 754 F. Supp. 3d 1311, 1318 (S.D. Fla. 2024) (Altman, J.)). On the other hand, the Court must grant summary judgment if a party "has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Lima v. Fla. Dep't of Child. & Fams.*, 627 F. App'x 782, 785–86 (11th Cir. 2015) ("If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." (quotation marks omitted) (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994))).

## ANALYSIS

Carnival advances four arguments. *First*, it says that the Plaintiff's failure-to-warn claim fails because the slippery deck "was open and obvious to [the] Plaintiff, and therefore, Carnival had no duty to warn [the] Plaintiff of the condition." MSJ at 2. *Second*, it argues that "the record is devoid of any evidence that Carnival had actual or constructive notice of the alleged dangerous condition (i.e., that the deck was unreasonably slippery due to a foreign, wet, slippery, and/or transitory substance or in this case 'rainwater')." *Id.* at 5. *Third*, it insists that "there is no evidence that Carnival negligently maintained the subject flooring." *Id.* at 8. *Fourth*, it contends that Haddad's vicarious-liability claim fails "[b]ecause [the] Plaintiff has not identified a specific Carnival employee who owed and breached a duty of care, and because the undisputed record evidence shows that the crew acted appropriately in accordance with established policies." *Id.* at 19. We address each argument in turn.

### I.      Open and Obvious

"Carnival had no duty to warn Plaintiff about something that she should have noticed through the ordinary use of her senses." *Poole v. Carnival Corp.*, 2015 WL 1566415, at *5 (S.D. Fla. Apr. 8, 2015) (Cooke, J.). "Here," Carnival adds, the "Plaintiff testified that it was actively raining at the time of the

incident and that the subject exterior deck appeared wet." *Id.* at 10 (citing Def. Facts ¶¶ 11, 17–19). "These conditions, rain and a visibly wet surface on an outdoor deck," Carnival continues, "are plainly associated with inclement weather and are not hidden or concealed." *Ibid.* In Carnival's view, then, "a reasonably prudent person in [the] Plaintiff's position would have observed and appreciated the presence of rain and the wet walking surface through the ordinary use of their senses." *Ibid.* In other words, "the alleged condition was open and obvious to a reasonable person, and therefore no duty to warn arose." *Id.* at 11. We agree.

"Under maritime law, a carrier's duty of reasonable care includes a duty to warn passengers of dangers of which the carrier knows or should know, but which may not be apparent to a reasonable passenger." *Foster v. Royal Caribbean Cruises Ltd.*, 812 F. Supp. 3d 1294, 1300 (S.D. Fla. 2025) (Altman, J.) (cleaned up); *see also Dudley v. NCL (Bah.) Ltd.*, 688 F. Supp. 3d 1194, 1200 (S.D. Fla. 2023) (Bloom, J.) ("[C]ruise lines owe their passengers a duty to warn of known or foreseeable dangers." (cleaned up)). But the "operator of a cruise ship has a duty to warn only of known dangers that are not open and obvious." *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1264 (11th Cir. 2020) (quoting *Guevara*, 920 F.3d at 720 n.5). "Open and obvious conditions are those that should be obvious by the ordinary use of one's senses. Whether a danger is open and obvious is determined from an objective, not subjective, point of view." *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1345–46 (S.D. Fla. 2015) (Moore, C.J.) (cleaned up); *see also Malley v. Royal Caribbean Cruises Ltd.*, 713 F. App'x 905, 908 (11th Cir. 2017) ("To determine whether a condition is open and obvious, this Court asks whether a reasonable person would have observed the condition and appreciated the nature of the condition."). Our question, therefore, is whether a reasonable person in Haddad's position would have appreciated the danger a rain-soaked deck presented during a storm on the high seas.

6

Luckily, the Eleventh Circuit has *already* answered this question—albeit in a non-binding,[1] *per-curiam* decision. *See Marshall v. Royal Caribbean Cruises, Ltd.*, 706 F. App'x 620 (11th Cir. 2017).[2] In that case, as here, "[i]t had rained off and on throughout that day, and it was undisputed that [the plaintiff] and her traveling companions were aware of the rain and the wetness of the external surfaces of the ship," on which the plaintiff slipped and fell. *Id.* at 621. The Eleventh Circuit affirmed the district court's entry of summary judgment for the defendant because "any alleged danger presented by the wet external deck was open and obvious," and the plaintiff therefore couldn't "establish that [the defendant] had a duty to warn her about the wet or slippery nature of the external decks because it was an open and obvious condition of which she was or should have been aware." *Ibid.*; *see also Marshall v. Royal Caribbean Cruises Ltd.*, 2017 WL 5308902, at *4 (S.D. Fla. Jan. 6, 2017) (Moore, C.J.) ("A reasonable person in Plaintiff's position would have been aware of the possibility of a puddle forming on an exterior surface of a cruise ship following a day of periodic rain."), *aff'd*, 706 F. App'x 620 (11th Cir. 2017).

We recognize that *Marshall* isn't binding on us, but we see no good reason to depart from Chief Judge Moore's (and the Eleventh Circuit's) well-reasoned and commonsense conclusion. As in *Marshall*, our parties agree that "[i]t had been raining throughout the day on March 23, 2024." Joint Facts ¶ 6. And the outdoor decks were wet. *See id.* ¶ 5 ("The subject deck was wet at the time of the incident due to rain."); Pl. Facts ¶ 48 ("[The] Plaintiff when asked whether 'obviously' outer decks get wet when it rains responded[,] 'Yes.'"); Haddad Dep. at 148:11–14 (Q: "Did you or your father remark

---

[1] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11TH CIR. R. 36-2; *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[2] Bizarrely, the Defendant cites then-Chief Judge Moore's district court order, *see Marshall v. Royal Caribbean Cruises Ltd.*, 2017 WL 5308902 (S.D. Fla. Jan. 6, 2017) (Moore, J.), but never mentions that the Eleventh Circuit affirmed Judge Moore's "thorough and well-reasoned discussion of the duty owed by" the cruise operator to the plaintiff, *Marshall*, 706 F. App'x at 621.

to one another or to yourselves about the existence of this liquid on the deck?" A: "We pointed out that the deck was wet[.]"); *see also Karesh v. Krystal Co.*, 2007 WL 9701667, at *3 (N.D. Ga. June 6, 2007) ("The risk of harm imposed by [rain] accumulation is not unreasonable but is one to which all who go out on a rainy day may be exposed and which all may expect or anticipate." (cleaned up)). And "*[o]f course* wet floors are dangerous." *Hostert v. Carnival Corp.*, 2024 WL 68292, at *8 (S.D. Fla. Jan. 5, 2024) (Altman, J.). In other words, it would be obvious to a reasonable passenger, "by the ordinary use of one's senses," *Lugo*, 154 F. Supp. at 1346, that an outdoor deck that "look[ed] visibly wet" and "darker" because it was "saturated" with rain that had been falling throughout the day might be dangerously slippery, Haddad Dep. at 95:22–96:7.

But our case is much easier than *Marshall* because it's undisputed that Haddad was *already* struggling to maintain his balance when he went out onto the deck, that he *knew* it was raining, that he *knew* the deck was wet, that he *understood* the deck would be slippery, and that he nevertheless proceeded onto the deck in search of food. *See id.* at 104:13–19. (Q: "So why continue out if you know that the floor is wet versus, you know, not getting out as far as you did and then turning around earlier?" A: "Well, I'll be honest. I was hungry and I wanted to see if I could make it to grab a plate for me and my dad[.]"); 95:22–24 (Q: "Did the floor look visibly wet to you as you approached it?" A: "It did[.]"); 96:3, 7 (Q: Did [the floor] appear saturated to you?" A: "Yeah."); 98:22–99:7 (Q: "[W]as there any sort of indication that would have led you to believe, oh this is wet[?]" A: "[W]ell it had been raining already by this point. . . . [I]t had already been raining. And so that was an indicator. And the floor, it looked like it had been, you know, there was a liquid across it. . . . [I]t looked saturated, it looked darker. It didn't have the matte shiny finish that it would have if it was dry."); 114:24–15:10 (Q: "Did you have any trouble walking around the ship before the incident?" A: "I was having a hard time keeping my balance. . . . [M]e and my dad were kind of bumping into each other, you know, swaying, losing balance a little bit, rocking around trying to counter the rocking of the ship. You know,

ship goes one way, you can either try to fight it or you can get tumbled over type situation [sic].”). Indeed, this may be the most obvious open-and-obvious case this Court has ever seen. It's certainly the first case we're aware of in which the Plaintiff *himself* admitted that the danger was both open and obvious. *See id.* at 104:7–9 (Q: “[O]bviously you know that outer decks get wet when it rains; correct?” A: “Yes.” Q: “I mean, that's open, it's obvious; correct?” A: “Yeah. Yes.”); 151:23–25 (“When I had stepped outside, I saw enough to understand that it was an unsafe environment.”); 100:12–14 (Q: “Did you try to be careful walking because you knew that the floor was wet?” A: “Yes.”); 148:11–14 (Q: “Did you or your father remark to one another or to yourselves about the existence of this liquid on the deck?” A: “We pointed out that the deck was wet[.]”); 148:20–22 (Q: “Did you consider the deck to be a slipping area because of the wetness?” A: “Yes.”); 91:20–92:4 (A: “I saw a couple of people that were wobbling as we were walking [inside], including my dad and myself.” Q: “Did you and your dad say anything about that or talk about that?” A: “We did. . . . Something to the effect of how these waves [sic]. I believe my father made a joke about feeling like a salad.”).

“We're generally loathe to grant summary-judgment motions filed by cruise-ship operators in maritime-tort cases.” *Foster*, 812 F. Supp. 3d at 1300; *see also Terry v. Carnival Corp.*, 2025 WL 2958627 (S.D. Fla. Oct. 20, 2025) (Altman, J.) (denying Carnival's MSJ); *Diego v. MSC Cruises, S.A.*, 2024 WL 2880699 (S.D. Fla. June 6, 2024) (Altman, J.) (denying MSC's MSJ); *Hostert*, 2024 WL 68292 (denying Carnival's MSJ). That's not because we're biased against cruise-ship operators, by the way; it's because the arguments cruise-ship operators typically advance in those motions—whether they should have been more careful or provided additional warnings, etc.—are the kinds of fact-intensive questions that are best left for juries. In the extreme circumstances of our case, however, we think it beyond cavil that a reasonable person in Haddad's position—using his ordinary perceptions of sight and balance— would have recognized the obvious dangers involved in stepping out onto a wet deck in flip-flops

during an *active* rainstorm, especially while he was *already* struggling to maintain his balance *inside* the ship's dry, carpeted flooring.

Against all this, Haddad advances three arguments—all unpersuasive. *First*, he says that "Carnival has a duty to warn of known dangers and by Carnival's own admission it undertook a duty to warn by making the announcements and placing a warning sign." *Id.* at 13–14. In Haddad's view, in other words, the condition couldn't have been "open and obvious" as a matter of law because, given Carnival's decision to warn "of the weather conditions onboard the vessel that day," there's "a genuine issue of material fact as to the sufficiency of Carnival's warning." *Id.* at 14. That's nonsense. "The open and obvious nature of a dangerous condition negates liability for failure to warn." *Carroll*, 955 F.3d at 1267. Whether Carnival's warnings were sufficient is thus irrelevant where, as here, the dangerous condition was open and obvious. *See, e.g.*, *Krug v. Celebrity Cruises, Inc.*, 745 F. App'x 863, 866 (11th Cir. 2018) ("Under federal admiralty law, a cruise ship has no duty to warn of known dangers that are open and obvious.").

*Second*, Haddad has his expert opine that "it would not have been obvious to passengers that because the deck was wet it must be slippery. On the contrary, passengers have a reasonable expectation that an open exterior deck would be slip-resistant." Response at 16 (quoting Pl. Expert Rep. [ECF No. 50-4] at 40). But the expert gives us no factual basis to believe that reasonable passengers would, in fact, hold this expectation. *See generally* Pl. Expert Rep. He conducted no surveys or polls of cruise-ships passengers, he didn't point to the testimonies of cruise-ship plaintiffs in other cases, and he in fact adduced no evidence at all for this proposition. The law is well-settled that a movant cannot survive summary judgment by relying on speculative expert testimony. *See McSwain v. World Fuel Servs. Corp.*, 546 F. Supp. 3d 1144, 1148–49 (S.D. Fla. 2021) (Cooke, J.) ("[D]istrict courts are charged with a gatekeeping function 'to ensure that speculative, unreliable expert testimony does not reach the jury.'" (quoting *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002));

*Hon-Meng Tang v. Republic Parking System*, 734 F. Supp. 486, 491 (N.D. Ga. 1989) ("For expert testimony to create a triable question of fact, it must be supported by a proper factual basis and must possess reasonable probability regarding the witness's opinion or conclusion. Thus, expert testimony based on speculation or expressing mere possibilities is of no probative value and is therefore insufficient to defeat a motion for summary judgment." (citing *Coats & Clark, Inc. v. Gay*, 755 F.2d 1506, 1510 (11th Cir. 1985)); *Nieves Martinez v. United States*, 2021 WL 1881388 (9th Cir. May 11, 2021) ("At summary judgment, courts may decline to consider 'unsupported speculation and subjective beliefs' in expert testimony and testimony that is not founded in fact."); *McManaway v. KBR, Inc.*, 852 F.3d 444, 449 (5th Cir. 2017) ("However, in reviewing expert opinion evidence, we look to the basis of the expert's opinion, and not the bare opinion alone. A claim cannot stand or fall on the mere *ipse dixit* of a credentialed witness." (cleaned up)). What's more, the expert ignores all the available evidence in this case—almost all of it from the mouth of his own client—to the effect that a reasonable passenger in these circumstances *would have* understood the floor to be wet, slippery, and dangerous. To be sure, the expert *might* have suggested that the Plaintiff doesn't qualify as a reasonable observer—for this or that reason. But he doesn't do that. And that's likely because the expert doesn't believe that his client's observations were somehow unreasonable given the totality of the circumstances. Which is all in the way of saying that we aren't persuaded by this part of the expert's shoddy, fact-free analysis.

*Third*, the Plaintiff maintains that he "was at the transition point from the interior dry deck into the exterior open deck [and] was unaware of the slippery and wet conditions." Response at 13. He insists that, "[p]rior to exiting, [when he was] in the interior dry section of the subject area," he was "unable to perceive how wet the exterior section of the deck was" and that a jury should decide whether "a reasonable person could perceive the danger." *Id.* at 14. Here, though, the Plaintiff simply ignores his own testimony. As we've explained, Haddad admitted, *on several occasions*, that the deck "look[ed] visibly wet" *and slippery* before he proceeded onto the deck. Haddad Dep. at 95:22–24 (Q:

"Did the floor look visibly wet to you as you approached it?" A: "It did[.]"); *see also id.* at 96:3, 7 (Q: Did [the floor] appear saturated to you?" A: "Yeah."); 100:12–14 (Q: "Did you try to be careful walking because you knew that the floor was wet?" A: "Yes."); 148:11–14 (Q: "Did you or your father remark to one another or to yourselves about the existence of this liquid on the deck?" A: "We pointed out that the deck was wet[.]"); 148:20–22 (Q: "Did you consider the deck to be a slipping area because of the wetness?" A: "Yes."). But that's not all. When asked whether there was any "indication" that the deck was wet, he conceded that "it had already been raining[,] [a]nd so that was an indicator." *Id.* at 98:22–99:3. He then explained that "there was liquid across" the deck, and that the deck "looked saturated, it looked darker. It didn't have the matte shiny finish that it would have if it was dry." *Id.* at 99:3–7. This is all in addition to Haddad's statements that he *knew* "outer decks get wet when it rains," *id.* at 104:7–8, and that, when he stepped onto the deck, he tried "careful walking because [he] knew that the floor was wet," *id.* at 100:12–13, and "consider[ed] the deck to be a slipping area because of the wetness," *id.* at 148:20–21. In his Response, Haddad now claims that he "was unaware of the slippery and wet conditions," Response at 13, but he identifies no *evidence* (and we can find none) to support this bizarre contention. "And it's well-settled that the absence of evidence is not enough to survive a motion for summary judgment." *Fagan v. U.S. Att'y Gen.*, 2025 WL 3170821, at *13 (S.D. Fla. Nov. 13, 2025) (Altman, J.).

What Haddad could have argued (but didn't) is that his own observations about the wet and dangerous condition of the floor are irrelevant because "whether a condition is open and obvious is not considered from the subjective standpoint of what the Plaintiff actually perceived[.]" *Foster*, 812 F. Supp. 3d at 1301 (cleaned up) (quoting *Bazan v. Carnival Corp.*, 2024 WL 3926291, at *8 (S.D. Fla. Aug. 8, 2024) (Sanchez, Mag. J.), *report and recommendation adopted sub nom. Bazan v. Carnival Cruise Lines*, 2024 WL 3916797 (S.D. Fla. Aug. 23, 2024) (Williams, J.)). And he might have suggested that "a reasonable person would [not] have observed the condition and appreciated the nature of the

12

condition." *Malley*, 713 F. App'x at 908. But, at summary judgment, "district courts cannot concoct or resurrect arguments neither made nor advanced by the parties." *Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011); *see also Resol. Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."). Besides, "[c]ourts routinely consider a plaintiff's *actual* knowledge of a risk-creating condition when evaluating whether the condition would've been open and obvious to a reasonable person in the plaintiff's position." *Foster*, 812 F. Supp. 3d at 1302 n.4. In other words, the reasonable-person standard "doesn't mean we don't take the plaintiff's circumstances into account when deciding what a reasonable person in the plaintiff's position would have understood." *Id.* at 1301. "On the contrary," as we've written, "the law *requires* us to assess the openness and obviousness of the danger 'from the standpoint of an objectively reasonable person *under the circumstances.*'" *Id.* at 1301–02 (quoting *Bazan*, 2024 WL 3926291, at *8). The question here, then, is whether a reasonable person in the same circumstances as Haddad—losing his balance and stumbling on the rocking ship, knowing that it was raining, observing the wet and rain-soaked deck, recognizing the slipperiness of the floor—would've appreciated the risk of falling. We think it beyond peradventure that a reasonable person in Haddad's position would have understood that walking on an outer deck in these circumstances carried significant risks.

Haddad tries to escape this common-sense result by citing *Frasca v. NCL (Bah.), Ltd.*, 654 F. App'x. 949, 952 (11th Cir. 2016). There, the Eleventh Circuit found that the slipperiness of a cruise-ship's deck wasn't open and obvious because "a reasonable person would have known that the deck would be slippery"—based on undisputed evidence that the deck was visibly wet and blanketed in heavy fog—"but not as slippery as it actually was." *Frasca*, 654 F. App'x at 952–53. "A jury," the *Frasca* Court held, "could credit the expert's testimony and conclude that the deck's visible wetness

and the weather conditions would not alert *a reasonable observer* to the extent of the deck's slipperiness." *Id.* at 953 (emphasis in original). But our case is different in three salient ways.

*First*, in *Frasca*, while the deck was blanketed in heavy fog, rain was no longer falling, and there was no indication that the ship was caught in a storm that was causing the ship and its passengers to tumble this way and that—much less that the plaintiff himself (and his father) had been unable, even on the dry indoor carpet, to keep their footing. *See* Haddad Dep. at 114:24–15:10 (Q: "Did you have any trouble walking around the ship before the incident?" A: "I was having a hard time keeping my balance. . . . [Me] and my dad were kind of bumping into each other, you know, swaying, losing balance a little bit, rocking around trying to counter the rocking of the ship. You know, ship goes one way, you can either try to fight it or you can get tumbled over type situation [sic]."); 91:20–92:4 (A: "I saw a couple of people that were wobbling as we were walking [inside], including my dad and myself." Q: "Did you and your dad say anything about that or talk about that?" A: " We did. . . . Something to the effect of how these waves. I believe my father made a joke about feeling like a salad.").

*Second*, our Plaintiff didn't just fall because the floor was wet. He fell *both* because the floor was wet *and* because the ship was being tossed by stormy seas. As we've said, the Plaintiff and his father were having difficulty standing even in the dry and carpeted indoor floor. *See* Haddad Dep. at 114:24–15:10 (Q: "Did you have any trouble walking around the ship before the incident?" A: "I was having a hard time keeping my balance. . . . [M]e and my dad were kind of bumping into each other, you know, swaying, losing balance a little bit, rocking around trying to counter the rocking of the ship. You know, ship goes one way, you can either try to fight it or you can get tumbled over type situation [sic]."); 91:20–92:4 (A: "I saw a couple of people that were wobbling as we were walking [inside], including my dad and myself."). And he fell only after a wave caused him to lose his balance. *See id.* at 106:23–107:5 ("[The *Venezia*] hit a wave swell, and I had fell and I slipped back and I had hit my knee on the first time that I had fallen. Then I grabbed on to a pillar . . . and I tried to use it to pull myself

14

up, and then we hit another wave swell on the other side . . . [and] fell[.]"). He even admitted that the dangerous condition he was stepping into was "open" and "obvious." (Q: "I mean, obviously you know that outer decks get wet when it rains; correct?" A: "Yes." Q: "I mean, that's open, it's obvious; correct?" A: "Yeah. Yes."). None of these facts were present in *Frasca*.

*Third*, the issue in *Frasca* was whether "a reasonable person would have known that the deck would be slippery, but not as slippery as it actually was"—in other words, whether the deck was "*unreasonably*" slippery. *Frasca*, 654 F. App'x at 952–53 (emphasis in original). But, for two reasons, that's not our case.

*One*, unlike what we saw in *Frasca*, there's no evidence that our deck was "unusually" slippery—*e.g.*, that *other* passengers were slipping and falling on the deck during the rainstorm. To the contrary, although Haddad admitted that there were "a solid maybe 15 to 20 people" on the deck when he fell, he had no evidence that any of them had likewise slipped and fallen on the surface. Haddad Dep. at 105:15–16.

*Two*, unlike the *Frasca* Plaintiff, Haddad doesn't argue that the deck was *unusually* slippery. Instead, as we've seen, he argues only that a reasonable person wouldn't have expected the deck to be slippery *at all*. *See* Response at 16 (positing that "it would not have been obvious to passengers that because the deck was wet it must be slippery"); *sea also id.* at 15 ("A reasonable person would believe that if the decks are open and crewmembers are actively drying the deck, then the subject exterior area must be reasonably safe and recently dried in the same manner as the interior portion."). Having rejected the argument Haddad *does* make, we won't save his claim by considering the viability of an argument he *doesn't* advance.

Relying on these two factors—a plaintiff who doesn't argue that the floor was *unreasonably* slippery *and* a lack of evidence of *other* people slipping—courts in our District routinely distinguish *Frasca* in cases just like ours. *See, e.g.*, *Luther v. Carnival Corp.*, 99 F. Supp. 3d 1368, 1371 (S.D. Fla. 2015)

(Williams, J.) ("Luther does not claim that the deck was more slippery than could ordinarily be expected and courts have found that the slickness of a rain soaked deck does not, by itself, establish negligence. Luther's testimony demonstrates that she recognized and appreciated the risk of slipping when walking on the deck; she testified that she noticed the wetness of the deck and stepped 'prudently,' further indication that she appreciated the everyday risk that comes with walking on a wet surface. Thus, her testimony makes clear that she was aware of the wet deck, and that the danger was apparent and obvious." (cleaned up)); *Wish v. MSC Crociere S.A.*, 2008 WL 5137149, at *1 (S.D. Fla. Nov. 24, 2008) (Marra, J.) (finding the danger of a rain-soaked deck "open and obvious" because it had been "drizzling and overcast" and because the "Plaintiff testified that she was aware that rain could cause a pool deck to become wet and slippery"); *Fury Mgmt. Inc. v. Luviano*, 2018 WL 3884824, at *5 (S.D. Fla. July 14, 2018) (Moore, C.J.) ("The alleged risk-creating conditions—the presence of water on the deck's surface and the unsteady nature of the platform—are conditions which a reasonable person in Luviano's position would have been aware."); *Scott v. Carnival Corp.*, 2024 WL 1635904, at *5 (S.D. Fla. Mar. 12, 2024) (Moore, J.) ("Plaintiff testified that as soon as he entered the subject area he immediately saw water 'pumping like oil all over the floor.' Plaintiff observed that 'the water was all over the deck' and that 'you couldn't go through neither door without hitting water.' Plaintiff then proceeded to walk through water that was 'high enough to wet his socks.' Further, as [the] Plaintiff chose not to address [the] Defendant's open-and-obvious argument, he seemingly does not dispute that any danger posed by the condition of the subject area was open and obvious. Under these circumstances, the Court agrees with Defendant that the slippery nature of the wet deck was a condition that was 'open and obvious to any reasonably prudent person through the exercise of common sense and the ordinary use of their eyesight.'" (cleaned up)), *aff'd*, 2025 WL 2402001 (11th Cir. Aug. 19, 2025). Indeed, it was precisely for these two reasons that then-Chief Judge Moore distinguished *Frasca* in the *Marshall* case we discussed earlier—a decision that, again, the Eleventh

16

Circuit affirmed. *See Marshall*, 2017 WL 5308902, at *4 ("Here, Plaintiff does not argue that the deck where Plaintiff slipped was unreasonably slippery, and her travel companions had no difficulty navigating the deck's surface.").

In short, there's no evidence that the deck was unusually slippery, and "speculation isn't enough to survive summary judgment." *Wills v. Walmart Assocs., Inc.*, 592 F. Supp. 3d 1203, 1220 n.6 (S.D. Fla. 2022) (Altman, J.); *see also Brown v. Learjet, Inc.*, 2025 WL 3724471, at *16 (S.D. Fla. Dec. 24, 2025) (Altman, J.) ("The Eleventh Circuit has 'said repeatedly that speculation about a fact or result is insufficient to survive summary judgment' because an 'inference based on speculation and conjecture is not reasonable.'" (quoting *Gadsby v. Am. Golf Corp. of Cal.*, 557 F. App'x 837, 840 (11th Cir. 2014))); *Fernandez v. Hotwire Commc'ns, Ltd.*, 2022 WL 4598638, at *13 (S.D. Fla. Sept. 30, 2022) (Altman, J.) ("[U]nsupported speculation does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (citations omitted)).

Because a reasonable person in Haddad's shoes would have recognized—as Haddad did—the "open and obvious" condition he was walking into, we **GRANT** the MSJ as to Count II.

## II.    Failure to Maintain

Even so, "the open and obvious nature of a dangerous condition does *not* bar a claim against a shipowner for negligent failure to maintain safe premises." *Carroll*, 955 F.3d at 1269 (emphasis added). So, despite our conclusion about the unviability of Count II, we must still proceed to the merits of Count I (Haddad's failure-to-maintain claim). "The elements of a negligence claim based on a shipowner's direct liability for its own negligence are well settled: a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Holland v. Carnival Corp.*, 50 F.4th 1088, 1094 (11th Cir. 2022) (cleaned up).

17

Carnival advances two arguments for its view that we should likewise enter judgment against Haddad on this claim. *First*, it says that it lacked "actual or constructive notice of the alleged dangerous condition." MSJ at 5. *Second*, it maintains that "there is no record evidence that Carnival negligently maintained the subject flooring." *Ibid.* We disagree on both points and thus deny this part of the MSJ.

### a. Notice

"With respect to the duty element in a maritime context, a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew," which "requires, as a prerequisite to imposing liability, that the carrier have had *actual or constructive notice* of a risk-creating condition[.]" *Holland*, 50 F.4th at 1094 (cleaned up & emphasis added). "'Actual notice exists when the defendant knows about the dangerous condition,' whereas 'constructive notice exists where the shipowner ought to have known of the peril to its passengers, the hazard having been present for a period of time so lengthy as to invite corrective measures.'" *Starks v. Carnival Corp.*, 2026 WL 1884313, at *2 (S.D. Fla. June 23, 2026) (Altman, J.) (quoting *Holland*, 50 F.4th at 1095 (cleaned up)).

Carnival claims that "there is no evidence that Carnival had either actual or constructive notice of the alleged dangerous condition related to the flooring of Deck 5." MSJ at 6. But it admits that "there was a caution sign present in the area of incident about 10 steps away from where [the] Plaintiff's incident occurred." Def. Facts ¶ 32 (citing Fuentes Dep. [ECF No. 48-5] at 48:3–24, 49:1–13); *see also id.* ¶ 33 ("Mr. Kharka also testified that there was a caution sign present in the area of incident." (citing Kharka Dep. [ECF No. 48-6] at 65:10–20)). The Eleventh Circuit has held "that a cruise ship operator has notice of a condition . . . if a sign is posted on a ship warning about the condition." *Guevara*, 920 F.3d at 722; *see also id.* at 721 ("We held [in *Sorrels v. NCL (Bah.) Ltd.*, 796 F.3d 1275, 1289 (11th Cir. 2015)] that the cruise ship employees' testimony—that the cruise line regularly placed warning signs advising passengers that the deck was 'slippery when wet'—was enough to create

18

a genuine issue of material fact regarding whether the cruise line had actual or constructive knowledge that the deck could be slippery after precipitation."); *Sorrels*, 796 F.3d at 1289 ("The testimony of [NCL employees]—that warning signs were sometimes posted on the pool deck after rain—viewed in the light most favorable to [the plaintiff], is enough to withstand summary judgment as to notice."); *Merideth v. Carnival Corp.*, 49 F. Supp. 3d 1090, 1094 (S.D. Fla. 2014) (Bloom, J.) (holding that the "presence of warning cones" near the site of the plaintiff's fall was evidence from which "a reasonable jury could . . . infer that [the defendant] was on notice of the potentially hazardous condition" (emphasis added)); *Brady v. Carnival Corp.*, 33 F. 4th 1278, 1283 (11th Cir. 2022) ("The fact that warning signs were posted on the [ ] deck in the general area of [the plaintiff's] fall, when viewed in the light most favorable to [the plaintiff], is enough to withstand summary judgment as to notice." (cleaned up)). We'll therefore let the jury decide whether Carnival had sufficient notice of the slippery deck.

### b. Negligence

As we've explained, Carnival also believes that summary judgment "is warranted because there is no evidence that Carnival negligently maintained the subject flooring." MSJ at 8. "To sustain a claim for negligent maintenance," Carnival says, "a plaintiff must present evidence that the defendant failed to act reasonably in maintaining or remedying the hazardous condition." *Ibid.* But, Carnival continues, our "Plaintiff offers no evidence establishing any unreasonable failure by Carnival to remedy or maintain the flooring." *Ibid.* "The record is clear," Carnival insists, "that it had been raining throughout the day of [the] Plaintiff's incident and Carnival followed its established procedures for managing such transient, weather-related conditions." *Ibid.* "Under these circumstances," Carnival maintains, "policies do not require crew members to attempt to dry exterior walking surfaces during ongoing rainfall, since efforts will be futile and immediately undermined by continued precipitation." *Ibid.* "There is" thus, in Carnival's view, "no indication that the area was unreasonably maintained, or that the crew deviated from company protocols." *Ibid.*

19

Haddad fails to offer any meaningful response to this element. Indeed, his only comment about this issue arrives in the form of a single sentence he included in his response to Carnival's notice argument: "To the extent," he says, "that Carnival argues, 'Carnival's policies do not require crew members to attempt to dry exterior walking surfaces during ongoing rainfall, since such efforts will be futile and immediately undermined by continued precipitation' is a genuine issue of material fact as to whether choosing not to dry or close the deck is reasonable care under the circumstances." Response at 5. Noting that the "Plaintiff completely ignores Carnival's argument that [the] Plaintiff has not provided any evidence to support his claim[ ] for negligent maintenance," Carnival urges us to grant summary judgment "for this reason alone." Reply at 10. We won't be doing that.

Although the Plaintiff should have done a better job briefing this issue, we "cannot base the entry of summary judgment on the mere fact that" the Plaintiff (mostly) failed to respond to Carnival's argument—"but, rather, [we] must consider the merits of the motion" either way. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). In other words, even when the non-movant fails to contest a fact at summary judgment, we must "review the full record on summary judgment," *Reese v. Herbert*, 527 F.3d 1253, 1271 (11th Cir. 2008), and cannot grant the movant's motion unless the record "supports the uncontroverted material facts that the movant has proposed," *Zurich Am. Ins. Co. v. Nat'l Specialty Ins. Co.*, 246 F. Supp. 3d 1347, 1355 (S.D. Fla. 2017) (Bloom, J.).

And we do think there may be something to the Plaintiff's theory that Carnival could have done a better job drying the deck's surfaces—or, at the very least, that Carnival could have prevented passengers from leaving the indoor areas of the boat while the storm was raging. So, we **DENY** the MSJ as to Count I and will allow the Plaintiff to present these arguments to the jury.

20

### III.     Vicarious Liability

Finally, Carnival asks us to grant summary judgment on Count III "because [the] Plaintiff fails to identify any specific crewmember whose conduct forms the basis of the alleged negligence." MSJ at 16. Haddad, Carnival adds, "has not identified a specific Carnival employee who owed and breached a duty of care, and because the undisputed record evidence shows that the crew acted appropriately in accordance with established policies, there is no genuine issue of material fact." *Id.* at 17. Haddad answers "that multiple employees were assigned to the subject area including specifically crewmember[s] assigned to actively dry the area," and that "a crew member [was] mopping inside the ship near the revolving doors[.]" *Ibid.* These employees, Haddad says, "failed to close the subject area and allowed continuous outdoor activities and fail[ed] to keep the subject area reasonably safe and dry." *Ibid.* Haddad also gestures at "housekeeping" generally, arguing that "these individuals" were responsible for keeping the deck dry. *Id.* at 18.

"When an alleged maritime tortfeasor is an employee, 'the principle of vicarious liability allows an otherwise non-faulty employer to be held liable for the negligent acts of that employee acting within the scope of employment.'" *Branyon v. Carnival Corp.*, 2025 WL 4100438, at *6 (S.D. Fla. Nov. 18, 2025) (Altman, J.) (quoting *Holland*, 50 F.4th at 1094). A plaintiff asserting a vicarious-liability claim must "identify [a] specific crewmember whose negligence cause[d] [her] injury." *Holland*, 50 F.4th at 1094. "A complaint in a vicarious liability case need not identify the negligent agent by name, so long as it identifies the agent by other means such as job duties or actions committed by the agent." *Mathis v. Classica Cruise Operator Ltd. Inc.*, 2024 WL 1430508, at *4 n.2 (S.D. Fla. Apr. 1, 2024) (McCabe, Mag. J.) (citing *Mclean v. Carnival Corp.*, 2023 WL 372061, at *1 (S.D. Fla. Jan. 24, 2023) (Scola, J.)), *report and recommendation adopted*, 2024 WL 3616006 (S.D. Fla. Aug. 1, 2024) (Cannon, J.). But summary judgment is appropriate if *either* the Plaintiff "did not identify any specific crewmember whose negligence caused [his] injury," *Holland*, 50 F.4th at 1094, *or* "no reasonable juror could conclude that an employee's

21

negligent actions were taken within the scope of employment," *Kadylak v. Royal Caribbean Cruise, Ltd.*, 167 F. Supp. 3d 1301, 1310 (S.D. Fla. 2016), *aff'd sub nom. Kadylak v. Royal Caribbean Cruises, Ltd.*, 679 F. App'x 788 (11th Cir. 2017). Haddad has done *just* enough to take his vicarious-liability claim to a jury.

In so holding, we find the Eleventh's Circuit decision in *Holland* instructive. In that case, the plaintiff, "Holland[,] denominated each count as a claim for vicarious liability and alleged in each count that Carnival was vicariously liable for any negligence or failure to exercise reasonable care by its crewmembers to maintain a hazard free stairway or to warn of any hazardous condition on the stairway." *Holland*, 50 F.4th at 1094. But the Eleventh Circuit said that wasn't enough because "other than the claims' titles and the conclusory allegation asserting that Carnival was vicariously liable, there [was] nothing in Holland's complaint that would lead one to understand his claims as seeking to impose liability on an otherwise nonfaulty Carnival for an employee's negligence." *Ibid.* As the *Holland* panel explained, the plaintiff "did not identify any specific crewmember whose negligence caused Holland's injury, much less a specific crewmember whose negligence occurred while acting within the scope of his employment—essential parts of any claim seeking to impose vicarious liability on an employer for an employee's negligence." *Ibid.*

*Holland* thus outlined two requirements: *one*, that the plaintiff identify "a specific crewmember"; *two*, that this specific crewmember's "negligence occurred while acting within the scope of his employment[.]" *Ibid.* In sum, summary judgment is appropriate "where [the plaintiff] has not identified any specific Carnival employee's negligent action that caused his fall." *Ibid.*; *see also Hostert*, 2024 WL 68292, at *11 ("A plaintiff asserting a vicarious-liability claim against a business for the negligent acts of its employee must identify the specific crewmember whose negligence caused her injury and prove that the negligence occurred while the employee was acting within the scope of his employment." (cleaned up)).

22

Haddad has satisfied both requirements here. *First*, Haddad has identified "a crew member mopping inside the ship near the revolving doors," who (he says) negligently "failed to close the subject area and allowed continuous outdoor activities and fail[ed] to keep the subject area reasonably safe and dry." Response at 17.  Carnival, for its part, *never disputes* that Haddad has identified a *specific* employee. *See generally* MSJ; Reply. Because the moving party (here, Carnival) bears the ultimate burden to show "that there is no genuine dispute as to any material fact," FED. R. CIV. P. 56(a), and since "[a]ll reasonable inferences must be drawn in favor of the nonmoving party," (in our case, Haddad), *Ismael*, 161 F.4th at 758, we have little choice but to conclude that Haddad has satisfied the first prong of *Holland*—identifying "a specific crewmember," *Holland*, 50 F.4th at 1094.[3] *See Case v. Eslinger*, 555 F.3d

---

[3] While the Eleventh Circuit requires a plaintiff to identify "a specific crewmember," *Holland*, 50 F.4th at 1094, it hasn't explained how *exactly* the plaintiff must identify that crewmember. Do we need the crewmember's proverbial name, rank, and serial number? Or is something less sufficient? Haddad doesn't know the crewmember's name. All he has is (undisputed) evidence that a Carnival "crew member [was] mopping inside the ship near the revolving doors[.]" Def. Facts ¶ 28. Had Carnival pointed us to some cases—or offered some argument—on this issue, we may well have found Haddad's evidence insufficient. But Carnival never argues that Haddad failed to identify a specific employee. It says only that the employee was "appropriately performing interior cleaning tasks," MSJ at 18, and that Haddad therefore failed to identify a "negligent action [by that employee] that caused his fall," *Holland*, 50 F.4th at 1094; *see also* Reply at 10 ("Because Plaintiff identifies no evidence that any crewmember violated policy or acted negligently, his vicarious liability claim fails as a matter of law and summary judgment should be granted."). Whether the employee Haddad identified acted negligently is, of course, a separate question from the one we're addressing here, which is whether Haddad identified a *specific* employee in the first place. *Cf. Branyon*, 2025 WL 4100438, at *6 (granting summary judgment on the plaintiff's vicarious-liability claim where "the only individual crewmember she believes did something wrong to cause her accident is whoever put the wire holder down," but the "undisputed" evidence established that "'whoever put the wire holder down' did so properly," and noting that the plaintiff therefore hadn't "identified a specific employee who, despite a duty to maintain the cable cover or to warn [her] about its presence, acted negligently"). "And (it probably goes without saying) we don't grant summary judgment on arguments a party hasn't supported with either evidence or legal citations." *Horowitz v. Allied Marine, Inc.*, 2023 WL 3568113, at *17 (S.D. Fla. May 19, 2023) (Altman, J.) (citation omitted).
      Plus, other judges in our District have said that, so long as a plaintiff identifies a specific crewmember, he needn't give us that crewmember's name at summary judgment. *See, e.g., Hodson v. MSC Cruises, S.A.*, 2021 WL 3639752, at *12 (S.D. Fla. Aug. 2, 2021) (Goodman, Mag. J.) (finding that evidence of "an *unidentified* crewmember [who] told [the plaintiff] to take the stairs" was enough to identify the employee at summary judgment, given "the lack of legal authority submitted by the parties on how much evidence is needed to 'identify' an employee and whether a plaintiff must name the

1317, 1329 (11th Cir. 2009) ("A party cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue [forfeits] it."); *Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *In re Egidi*, 571 F.3d at 1163 ("Arguments not properly presented . . . are deemed waived.").

*Second*, Haddad has done enough to show that the mopping employee acted negligently within the scope of his employment. Carnival claims that this employee wasn't acting within the scope of his employment because he "was [not] assigned to dry the deck at the time of the incident." Reply at 9. Even if he had been assigned to mop those floors, though, Carnival insists that the "assigned crewmember was[n't] negligent for failing to close the area and allowing passengers to access the exterior deck despite the rain" because "Carnival's policies do not require" those actions and "drying efforts would have been ineffective[.]" *Ibid.*

As to this second element, however, a court "may grant summary judgment" only "if no reasonable juror could conclude that an employee's negligent actions were taken within the scope of

---

negligent employee if the evidence establishes that he in fact works for the defendant employer"), *report and recommendation adopted*, 2021 WL 3634809 (S.D. Fla. Aug. 16, 2021) (Moreno, J.); *Elardi v. Royal Caribbean Cruises, Ltd.*, 2021 WL 7367291, at *4 (S.D. Fla. Dec. 2, 2021) (Graham, J.) (denying summary judgment where the plaintiff identified "an [unknown] RCCL employee" whose "mis-installation of two screws in a prior repair of the subject sofa in the course and scope of his employment was the reason why the sofa later collapsed under the plaintiff" and caused her injuries, reasoning that a plaintiff needn't give "the identity of the 'specific employee'" because that would mean "a defendant can avoid liability by simply withholding or not ascertaining" the name of an employee). We came to a similar conclusion in *Hostert*, saying that "nothing in *Holland* requires a slip-and-fall plaintiff to identify the offending crewmember by name, rank, and serial number—a requirement that would make little sense in an industry that regularly staffs its ships with *temporary* employees from around the world who, after short stints on ships, often return home." 2024 WL 68292, at *12 n.5.

employment." *Kadylak*, 167 F. Supp. 3d at 1310. "The phrase 'scope of employment' is a well-known common-law concept that includes 'the range of reasonable and foreseeable activities that an employee engages in while carrying out the employer's business.'" *McCullen v. Coakley*, 573 U.S. 464, 507 (2014) (Scalia, J., concurring) (quoting Black's Law Dictionary 1465 (9th ed. 2009)). Here, a reasonable juror could conclude that an employee's decision to mop the wet floor outside a ship's revolving door fell well within "the range of reasonable and foreseeable activities" for an employee who was *already* mopping the adjacent *inner* floors. *Ibid.* Whether that employee was *negligent* in performing his duties— that is, whether the employee could have done a better job drying the deck's surfaces or prevented passengers from leaving the indoor area of the boat while the storm was raging—is a question best left to the jury. And while Carnival's policies may be relevant in deciding whether the employee's failure to mop those outdoor floors fell below the standard of care, the law is clear that a defendant's policies do not *themselves* set the standard of care. *See Rondon v. Carnival Corp.*, 2025 WL 2551262, at *3 (S.D. Fla. Sept. 5, 2025) (Altman, J.) ("[W]hether the standards 'must' be followed is the wrong question. . . . The standards *cannot* set the standard for dangerousness—they're merely *evidence* of whether the threshold was dangerous."); *Thompson v. Wal-Mart Stores E., L.P.*, 2022 WL 59678, at *6 n.7 (S.D. Fla. Jan. 6, 2022) (Altman, J.) ("[The defendant's] policies—while they don't fix the standard of care in a negligence action—can be relevant to the fact-finder's determination of what that standard of care might be." (citing *Mayo v. Publix Super Markets, Inc.*, 686 So. 2d 801, 802 (Fla. 4th DCA 1997) ("We clarify that a party's own internal operating manuals are admissible if relevant to the issues raised. We reiterate, however . . . that a party's internal rule does not itself fix the legal standard of care in a negligence action[.]"))); *Quashen v. Carnival Corp.*, 576 F. Supp. 3d 1275, 1297 (S.D. Fla. 2021) (Moore, J.) ("[I]t is well settled that general maritime law does not recognize a claim of negligence that is premised upon a company's general policies and operations. The Eleventh Circuit has held that such a theory of negligence would be 'at odds with admiralty law's requirement that a cruise ship must have

25

notice of the dangerous condition.'" (quoting *Malley*, 713 F. App'x at 910 ("No court has ever held that this claim exists in federal admiralty law.'"))); *Sorrels*, 796 F.3d at 1282 ("[E]vidence of custom within a particular industry, group, or organization is admissible as bearing on the standard of care in determining negligence." (cleaned up)); *RLI Ins. Co. v. Alfonso*, 2021 WL 430720, at *18 (S.D. Fla. Feb. 8, 2021) (Altman, J.) (noting that the defendant "could have argued that [ ] failure to comply with that standard evidenced its negligence" (citing *Sorrels*, 796 F.3d at 1282 ("Compliance or noncompliance with such custom, though not conclusive on the issue of negligence, is one of the factors the trier of fact may consider in applying the standard of care.")))); *Hostert*, 2024 WL 68292, at *13 ("True, these policies don't fix the standard of care for negligence. But Carnival's policies *can* be relevant to the fact-finder's determination of *what* the standard of care might be.").

All that said, we come out the other way on Haddad's argument that the "housekeeping" department as a whole was negligent for not keeping the deck dry. Response at 18. Here, Haddad relies on the deposition of Carnival's assistant housekeeping manager, Margie Maceda Fuentes. *See* Response at 18 ("When asked about rainwater, Fuentes says 'it's housekeeping's responsibility to clean it up.'" (quoting Fuentes Dep. at 24:13–14)). And that is what Fuentes said. *See* Fuentes Dep. at 24:21–25 (Q: "Is housekeeping responsible for cleaning up natural occurring liquid or wet conditions on the decks?" A: "Yes." Q: "Okay. Such as rainwater, right?" A: "Yes."). But we rejected this same argument in *Branyon*. The plaintiff there had "accus[ed] Carnival's entire Entertainment Technical Department of negligence." *Branyon*, 2025 WL 4100438, at *8. That, we said, isn't what the *Holland* test envisioned. "Faced with an absence of evidence that any individual employee acted negligently," we explained, "Branyon transforms her vicarious-liability claim into one against an entire department—something the Eleventh Circuit has found impermissible." *Ibid.* (citing *Holland*, 50 F.4th at 1094 ("Holland did not identify any specific crewmember whose negligence caused Holland's injury, much less a specific crewmember whose negligence occurred while acting within the scope of his employment—essential

26

parts of any claim seeking to impose vicarious liability on an employer for an employee's negligence.")); *see also Yusko v. NCL (Bah.), Ltd.*, 4 F.4th 1164, 1170 (11th Cir. 2021) ("[C]ommon sense suggests that there will be just as many occasions where passengers are limited to a theory of direct liability. Sometimes . . . a passenger will not be able to identify any specific employee whose negligence caused her injury." (cleaned up)). So too here. Haddad cannot circumvent the requirement to produce *evidence* that a specific employee was negligent by blaming an entire department.

Because Haddad has adduced *just enough* evidence that a *specific* employee *may* have acted *negligently* within the scope of his employment, we **GRANT in part** and **DENY in part** the MSJ as to Count III. Haddad may proceed to trial on the theory that Carnival is liable for the (alleged) negligence of the employee who was mopping the floor inside the revolving door. But he cannot impute to Carnival the supposed negligence of the housekeeping department as a whole.

## CONCLUSION

After careful review, in short, we **ORDER and ADJUDGE** as follows:

1. The Defendant's Motion for Partial Summary Judgment [ECF No. 193] is **GRANTED in part** and **DENIED in part**.

    a. The Motion is **DENIED** as to Count I.

    b. The Motion is **GRANTED** as to Count II.

    c. The Motion is **GRANTED in part** and **DENIED in part** as to Count III.

2. The Clerk shall **REOPEN** this case.

3. By **August 24, 2026**, the parties shall submit an Amended Joint Scheduling Report, proposing dates for all remaining pre-trial deadlines and trial.

**DONE AND ORDERED** in the Southern District of Florida on August 10, 2026.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

28